UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KEVIN CONNORS, JAMES CUIFFO, ARTHUR FITZPATRICK, WILLIAM MIRANDA, JOSEPH CANGELERI and BARRY KILPATRICK,

Plaintiffs,

-against-

JOSEPH J. NIGRO, in his capacity as General President of SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS; ROBERT DIORIO, in his capacity as International Trustee of LOCAL UNION NO. 28 OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS; and SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS,

Defendants.
-------------------------------------------------------------------X

**AMENDED COMPLAINT**

**JURY DEMAND**

Plaintiffs, by their attorneys, Lewis, Clifton & Nikolaidis, P.C., complaining of the defendant, allege as follows:

**NATURE OF ACTION**

1. This action is brought under Section 304 of the Labor-Management Reporting and Disclosure Act of 1959 (“LMRDA”), 29 U.S.C. § 464, and Section 301 of the Labor Management Relations Act (“LMRA”), 29 U.S.C. § 185, to enjoin the establishment of a trusteeship by the International Association of Sheet Metal, Air, Rail and Transportation Workers (“SMART” or “the International”) over Local Union No. 28 of SMART (“Local 28”) on the grounds that (i) the trusteeship was not established in good faith for a purpose allowable under Section 302 of the LMRDA, 29 U.S.C. § 462, but was in fact established in retaliation against Local Union President/Business Manager Kevin Connors and other Union officers for their initiation of a lawsuit, as Trustees of the Local 28 Benefit Funds, against the former

President/Business Manager of Local 28, the former Fund Administrator and other former Trustees for breach of their fiduciary duties, and in retaliation against Connors for launching a political campaign against defendant Joseph J. Nigro for the position of General President of SMART; (ii) the trusteeship was not established in conformity with the procedural requirements of the Constitution of SMART because the Local Union and its officers were not afforded a full and fair hearing nor accorded the due process required by such hearing; and (iii) the trusteeship is an unlawful continuation of the trusteeship first established by the International in November 2010, which was effectively extended by the International in May 2012 under the guise of "supervision," and is therefore presumptively invalid.

**JURISDICTION AND VENUE**

2. The court has subject matter jurisdiction over this action pursuant to Section 304(a) of the LMRDA, 29 U.S.C. § 464(a) and Section 301(a) of the LMRA, 29 U.S.C. § 185(a). Venue in the Southern District of New York is proper under Section 304(b) of the LMRDA, 29 U.S.C. § 464(b), because the officers and agents of the defendant International are conducting the affairs of the trusteeship at the Local 28 office which is located within the Southern District of New York.

**PARTIES**

3. Plaintiff Kevin Connors is a member of Local 28 within the meaning of Section 3(o) of the LMRDA, 29 U.S.C. § 402(o), and is the elected President/Business Manager of Local 28. Connors has been a member of Local 28 for 32 years. Connors resides in the County of Queens, State of New York.

4. Plaintiff James Cuiffo is a member of Local 28 within the meaning of

Section 3(o) of the LMRDA, 29 U.S.C. § 402(o), and is the elected Financial Secretary-Treasurer of Local 28. Cuiffo has been a member of Local 28 for 34 years. Cuiffo resides in the County of Suffolk, State of New York.

5. Plaintiff Arthur Fitzpatrick is a member of Local 28 within the meaning of Section 3(o) of the LMRDA, 29 U.S.C. § 402(o). Fitzpatrick, who is now retired, has been a member of Local 28 for 52 years. Fitzpatrick resides in the County of Suffolk, State of New York.

6. Plaintiff William Miranda is a member of Local 28 within the meaning of Section 3(o) of the LMRDA, 29 U.S.C. § 402(o). Miranda has been a member of Local 28 for 36 years. Miranda resides in the County of Suffolk, State of New York.

7. Plaintiff Joseph Cangeleri is a member of Local 28 within the meaning of Section 3(o) of the LMRDA, 29 U.S.C. § 402(o). Cangeleri has been a member of Local 28 for 30 years. Cangeleri resides in the County of Suffolk, State of New York.

8. Plaintiff Barry Kilpatrick is a member of Local 28 within the meaning of Section 3(o) of the LMRDA, 29 U.S.C. § 402(o). Kilpatrick has been a member of Local 28 for 27 years. Kilpatrick resides in the County of Nassau, State of New York.

9. SMART is an international labor organization within the meaning of Sections 3(i) and (j) of the LMRDA, 29 U.S.C. §§ 402(i) and (j), and Section 2(5) of the LMRA, 29 U.S.C. § 152(5). The principal office of SMART is located at 1750 New York Avenue, N.W., Washington, D.C. 20006.

10. Defendant Joseph J. Nigro is the General President of SMART, and is sued herein in that capacity.

11. Robert DiOrio is the International Trustee of Local 28, and is sued herein in that capacity. Local 28 is a local labor organization within the meaning of Sections 3(i) and (j) of the LMRDA, 29 U.S.C. §§ 402(i) and (j), and Section 2(5) of the LMRA, 29 U.S.C. § 152(5). Local 28 is currently affiliated with SMART. The principal office of Local 28 is located at 500 Greenwich Street, New York, New York 10013.

**FACTUAL ALLEGATONS**

**A. Historical Background**

12. The relationship between SMART and Local 28 is governed by the Constitution of SMART and applicable federal statutes.

13. On or about November 8, 2010, Local 28 was placed under trusteeship by the International pursuant to Article Three of the International Constitution ("the First Trusteeship"). The First Trusteeship was established, according to representations made by the International to the U.S. Department of Labor, in order to assure the performance of collective bargaining agreements or other duties of a bargaining representative and to restore democratic procedures. Michael J. Sullivan, the General President of SMART at the time, appointed International Representative Craig Sandberg as the Trustee of Local 28.

14. Michael V. Belluzzi, the President/Business Manager of Local 28 at the time the First Trusteeship was imposed, was not initially removed from office by the International, but was finally removed by Sullivan on May 4, 2011. Sullivan's removal of Belluzzi was based, *inter alia*, on the following grounds: (a) Belluzzi signed a 10-year agreement with 17 Union Place, Inc. ("17 Union Place"), a company that was owned and operated by John Gil, who was also the owner of PGA Mechanical Contractors, Inc. ("PGA Mechanical"), a signatory contractor, for the off-site storage of HIPAA sensitive documents (in

the basement of a home owned by Gil) at a monthly cost which far exceeded the cost of a professional off-site facility; (b) Belluzzi knowingly allowed an informal and unlawful arrangement whereby the Local Union did not pay the required contributions to the Health & Welfare Funds for elected full-time Local officials; (c) Belluzzi initiated or approved the purchase and installation of camera equipment at the Local Union office for no discernable purpose, at a cost of $30,500, without obtaining membership approval as required by the Constitution; (d) Belluzzi authorized the expenditure of $385,478 to the Sheet Metal Workers Local 28 Pension, Welfare and Annuity Trust Funds ("the Funds") in 2010 for "cost sharing" that purportedly dated back to 1999, and refused to provide the supporting documentation for this expenditure to the Union Controller; (e) Belluzzi, as Co-Chairman of the Funds, secured the employment of his daughter under a work-at-home arrangement, where her hours could not be monitored and where she stored HIPAA sensitive documents, at a cost that far exceeded the cost of contracting out the work or performing the work by existing in-house employees, and Belluzzi subsequently paid his daughter as an independent contractor for 160 hours per month without putting the work out for bid and without any written agreement for her services; (f) Belluzzi, as Co-Chairman of the Funds, was grossly negligent in monitoring the cash balances, and specifically, knew or should have known that up to $50 million in Fund assets were held in non-interest accounts or at nominal rates; (g) Belluzzi, as Co-Chairman of the Funds, was grossly negligent in monitoring significant delinquencies, up to $20 million, and as Business Manager, failed to require timely payment of fringe benefit contributions; and (h) Belluzzi, as Co-Chairman of both the Education and Welfare Funds, signed and authorized a loan of $1,117,000 from the Welfare Fund to the Education Fund without prior approval of the Trustees from either Fund.

15. In or around June 2011, International Representative Bob DiOrio filed internal disciplinary charges against Belluzzi.

16. On June 30, 2011, Sullivan resigned as General President of SMART, and on July 1, 2011, the General Executive Board of SMART appointed Nigro as the new General President.

17. After Nigro became General President of SMART in July 2012, the International postponed the trial of the charges against Belluzzi, purportedly on the grounds that there was an ongoing investigation by the U.S. Department of Labor and the U.S. Attorney's office.

18. In late June 2011, Sandberg abruptly resigned as the International Trustee of Local 28. On information and belief, Sandberg resigned as Trustee after being advised that he was going to be terminated by Nigro because he had read Sullivan's letter removing Belluzzi to the members at a Local 28 membership meeting. DiOrio was appointed by Nigro to replace Sandberg as the Trustee of Local 28.

19. On or about March 20, 2012, the International mailed a notice to all members of Local 28 announcing that a special election would be held in May 2012 for certain offices, including the office of President/Business Manager, to complete Belluzzi's and the other officers' three-year terms of office.

20. At a nominations meeting in April 2012, Connors, Belluzzi and Tino Sarmiento were all nominated for the office of President/Business Manager of Local 28.

21. The election for President/Business Manager was held in May 2012, and Connors won the election by a tally of 1006 for Connors, 229 for Belluzzi, and 84 for Sarmiento.

**B. The Lifting of the Trusteeship and the Establishment of "Supervision"**

22. By letter dated May 7, 2012, Nigro advised Connors that effective May 8, 2012, Local 28 was no longer under trusteeship. However, Nigro further advised Connors that the Local Union would remain under the "supervision" of International Representative DiOrio "for the time being." Nigro stated that DiOrio would have the authority "to take such action as necessary to protect the interests and welfare of Local Union 28, its members, funds and property," and that his primary responsibility would be "to oversee and correct, if necessary, the operations of the Local Union."

23. In the months following the official termination of the First Trusteeship, and the establishment of the International's "supervision" of Local 28 – and particularly after Connors and the other Union Trustees of the Funds proposed that a lawsuit be filed against Belluzzi, McGrath and certain other former Trustees for multiple violations of ERISA – it became clear that the International intended to control every substantive activity of the Local Union, and further, to give detailed directions to, and make specific demands of, Connors and Local 28 in such a way as to deprive Local 28 of the autonomy otherwise available to Local Unions affiliated with SMART.

24. Soon after his election to Union office in 2012, and his subsequent appointment as a Trustee of the Funds, Connors and the other Union Trustees proposed that a lawsuit be filed against Belluzzi and McGrath for breach of fiduciary duties, and against John Gil, and his companies PGA Mechanical and 17 Union Place. After learning of this proposal, Nigro and DiOrio made it clear to Connors that they did not want such a lawsuit to be filed. DiOrio incorrectly advised Connors that he and the current Trustees had no fiduciary responsibility to recover Fund assets lost by reason of the actions of Belluzzi and McGrath.

25. On or about April 5, 2013, the Trustees filed a lawsuit against Belluzzi, McGrath, Gil, PGA Mechanical and 17 Union Place in United States District Court for the Eastern District of New York ("the Trustees' lawsuit"), alleging violations of ERISA, and seeking, *inter alia*, to recover (i) approximately $1.3 million in Fund assets that were transferred to Gil, PGA Mechanical and 17 Union Place through improper arrangements facilitated by Belluzzi and McGrath, and concealed from the Trustees of the Funds; and (ii) over $200,000 in Fund assets that were improperly transferred to McGrath and relatives of Belluzzi and McGrath.

26. After the Trustees' lawsuit was filed, Connors was told by both Nigro and DiOrio, neither of whom was a Trustee of the Funds, that the lawsuit should be dropped. Both Nigro and DiOrio instructed Connors to direct the other Union Trustees to vote to withdraw the lawsuit. Connors advised DiOrio that as a Trustee of the Funds he did not have the authority to tell the other Trustees how to vote, and that he, himself, would not vote to drop the lawsuit.

27. Subsequent to the filing of the Trustees' lawsuit, DiOrio told Connors that because the Trustees had filed the lawsuit, after Connors had been instructed not to do so, DiOrio would now physically be at the Local Union office on a more frequent basis. DiOrio further directed Connors to submit a weekly report to him, detailing information concerning Local Union affairs, such as Executive Board meetings, Building Trades meetings, attorney meetings, legal actions, Local Union charges, and non-recurring expenditures.

28. In or around July 2013, Connors and the other Union Trustees sought to amend the Trustees' lawsuit (i) to include as defendants three former Employer Trustees of the Funds, Michael Checchi, Don Betterbed, Jr. and Robert Schratzmeier, who were also contributing employers, who had amassed unpaid delinquencies to the Funds totaling almost

$6,000,000; and (ii) to add additional claims against Belluzzi and McGrath for breach of fiduciary responsibilities by concealing the existence and/or extent of employer delinquencies.

29. In August 2013, the Funds' counsel advised the court, by letter, of their intention to amend the Trustees' lawsuit as described above, and attached a copy of the proposed amended complaint thereto.

30. Shortly thereafter, Nigro directed Connors to terminate the Funds' counsel and to rehire the former Funds' counsel who were counsel during the period in which Belluzzi was Co-Chairman of the Trustees and McGrath was the Funds Administrator. The Trustees' declined to do so.

31. In addition, Nigro, DiOrio and/or Marc Norberg, Nigro's chief assistant, issued numerous directives with increasing frequency to Local 28 during the period of supervision. These were intended to deprive and had the effect of depriving Local 28 of autonomy, and were intended to harass Connors and Cuiffo and prevent them from performing their core duties as President/Business Manager and Financial Secretary-Treasurer. As a partial list of such directives, Nigro, Norberg and/or DiOrio:

- Directed Connors to create numerous Local Union committees, including a Newsletter Committee, Organizing Committee, Industry Advancement Committee, Competition Committee, Education Committee, Membership Education Committee, Service Committee, Credentialing Committee and Budget Committee, despite the fact that no such committees were created during the 18-month period of the First Trusteeship which preceded the supervision, and the fact that the Constitution and Bylaws of Local 28 do not provide for the establishment of such committees. The Constitution and Bylaws of the Local Union provide for the establishment of such committees "as may be appointed or elected from time to time, as the

Local may find necessary for the proper conduct of its affairs." (Emphasis added). Nigro directed Connors to convene monthly meetings of the committees, and to submit sign-in sheets of those attending the meetings to Norberg. Further, Nigro gave specific instructions to Connors as to the percentage of rank and file participation that he required on each committee, and the particular tasks that each committee was required to undertake. Upon information and belief, other Local Unions of SMART do not have such committees and have not been directed by the International to establish such committees.

- Directed Connors to submit correspondence to Norberg for his approval before mailing, and demanded that any and all correspondence or other communications regarding the EEOC Consent Decree, to which the Local Union and not the International was bound, be first approved by the International.

- Directed Connors to terminate the Local 28 attorneys, and to rehire the attorneys who were counsel for Local 28 when Bellluzzi was President/Business Manager. Connors complied with this directive.

- Directed Connors to drop the Trustees' lawsuit against Belluzzi, McGrath, Gil, PGA Mechanical and 17 Union Place. The Trustees declined to do so.

- Hired an IT consultant, Gary Cogan, at a cost of $22,000 per month, and compelled the Local Union to reimburse the International for the monthly fee, without the approval of the Local 28 membership, and refused to allow the consultant to meet with the Local Executive Board. Subsequent documentation received from Norberg indicated that the International was paying Cogan $13,000 per month while charging the Local Union $22,000 per month.

32. Shortly before Connors' election as President/Business Manager, Sandberg, as the International Trustee of Local 28, negotiated a settlement of an EEOC case against Local 28 which provided for the ultimate release of the Local Union from a 40-year old Consent Decree. Soon after Connors' election, the International directed him to sign the proposed Settlement Agreement. After further negotiations with the plaintiffs and the EEOC, Connors signed the Settlement Agreement, and reported it to the members at a membership meeting.

33. In or around April 2013, the International reversed course, without notice to Local 28, and notified the plaintiffs and the EEOC that the International was going to amend the Settlement Agreement. The International then created an "Exit Committee" in connection with the Consent Decree, and advised Connors that he no longer had the authority to negotiate a settlement of the EEOC case on behalf of Local 28. The International further compelled the Local Union to hire Tom Doherty, a retiree and former employee of the Joint Labor-Management Fund, to chair the Exit Committee at a salary of $75,000 per year. The International insisted upon certain changes to the proposed Settlement Agreement, including (i) the addition of a requirement that all sheet metal workers would have to be hired through a mandatory hiring hall, rather than a referral system, and (ii) the deletion of any provision that required membership approval of the Settlement Agreement.

34. In or around April 2013, Local 28 sent a notice of nominations and election to the membership announcing that the regular triennial election of officers would be held on June 15, 2013.

35. In the June 2013 election, the only candidates running for the position of President/Business Manager were Connors and Robert Rotolo, and the only candidates running

for the position of Financial Secretary-Treasurer were Ciuffo and Daniel Fox. Both Connors and Ciuffo won their elections overwhelmingly.

36. In or around September 2013, Connors publicly announced that he would be running for the position of General President of SMART in the 2014 election of International officers, and he sent the announcement to Business Managers of SMART Local Unions across the country. In his written announcement, Connors stated, *inter alia*:

- That when Nigro became General President of SMART he and his assistant Norberg began to interfere with Local 28 affairs more and more, and tried to stop Connors from doing his duty for the members;

- That the Fund Trustees brought suit against Belluzzi to try to recover the losses for which Belluzzi was responsible, but that Nigro and Norberg wanted Connors to drop the lawsuit;

- That Nigro and Norberg forced Local 28 to hire a computer "expert" who was costing the Local a fortune and who reported to the International, not to the Local;

- That Nigro and Norberg were holding meetings with the Special Master in the EEOC case without Connors' knowledge (even though the International was not even a party to the case); and

- That at the next International convention Connors was going to run against Nigro.

37. Norberg and other International representatives attended the Local 28 membership meeting immediately following Connors' announcement. At the meeting, Norberg questioned Connors about the letter announcing his candidacy, and repeatedly asked Connors if he was going to be filing internal disciplinary charges against Nigro.

**C. The November 13, 2013 Trusteeship**

38. By letter dated November 13, 2013, Nigro notified the officers of Local 28 that he was placing Local 28 under an emergency trusteeship, purportedly for the following reasons: (1) that the officers had engaged in financial malpractice; (2) that the officers had failed to enforce key provisions of the collective bargaining agreement; (3) that the officers had delayed and obstructed the implementation of a computerized data system that would enable an accurate understanding of the distribution of work in the union's jurisdiction; (4) that the Local Union meetings were often out of control, thus deterring democratic participation by the members; and (5) that in general the Local Union was administered in a haphazard, incompetent fashion.

39. Nigro immediately suspended two officers and three Business Agents of Local 28, including Connors, Cuiffo, Frank Nitto, Ray Minieri and Ralph Totora, all of whom were Trustees of the Funds and plaintiffs in the Trustees' lawsuit. Nigro did not suspend Business Agents Butch Keane, Brian McBrearty, Eric Meslin and Nate Mays, none of whom were Trustees of the Funds and none of whom were plaintiffs in the Trustees' lawsuit.

40. On or about November 13, 2013, Nigro sent a notice to all members of Local 28, advising them that he had placed Local 28 in trusteeship. In his notice to the members, the only reason Nigro offered for imposing the trusteeship was "that some of the local officers have not performed on your behalf at the level as demanded in our Constitution and that the collective bargaining agreement is not being enforced vigorously."

41. Article Three, Section 2(c) of the International Constitution provides that "a Trusteeship that is to be continued for a period of more than sixty (60) days shall be subject to

ratification by the General Executive Council or Subcommittee thereof after a hearing." Implicit in such provision is that any such hearing shall be a full and fair hearing.

42. By letter dated November 13, 2013, Ronald H. Whatley, a Business Manager of another Local Union of SMART, advised the members of Local 28 that a subcommittee of the General Executive Council ("the Subcommittee") had been appointed to hold a hearing regarding the trusteeship, and that the hearing would be held on November 25, 2013. The purpose of the hearing, according to Whatley, was "to hear and consider evidence to determine if the subcommittee should ratify the decision of the General President to place Local Union #28 in trusteeship."

43. In order to prepare for the hearing, Connors sent a letter to Nigro on November 19, 2013, requesting that Nigro provide Connors with any information in his possession, including all documents, relating to the reasons given for the trusteeship. In addition, Connors requested an adjournment of the hearing date to at least three weeks after the provision of the requested information to enable him to review the purported evidence before the hearing.

44. Neither Nigro nor the Subcommittee responded to Connors' request for an adjournment.

45. The International provided a packet of documents to Connors on November 21, 2013, four days before the hearing, and provided an additional packet of documents to Connors on November 25, 2013, just prior to the start of the hearing, allowing Connors little or no time to review the purported evidence supporting the establishment of a trusteeship.

46. At the trusteeship hearing, DiOrio, Norberg and International Representative Brad Plueger testified in favor of the establishment of the trusteeship. None of

the testimony and/or documentary evidence offered by these witnesses supported the reasons given by Nigro in his November 13, 2013 letter for imposing the trusteeship. For example:

- Nigro alleged that the current officers had engaged in financial malpractice by "double-dipping." DiOrio testified that the Local 28 officers and Business Agents "double-dipped" when attending union conferences by paying themselves an incorrect per diem, but in fact the system utilized by Connors, Cuiffo and the other Business Agents was exactly the same system put in place by DiOrio when he was the Trustee of Local 28.

- Nigro alleged that the current officers had "failed to enforce key provisions of the collective bargaining agreement." Norberg testified that Connors failed to enforce the provision of the Collective Bargaining Agreement requiring employers to notify the union when an employee was hired or terminated. In fact, no effort whatsoever was made to enforce that provision during the First Trusteeship, and it was only Connors who took concrete steps to enforce it.

- Nigro alleged that the current officers had delayed and obstructed the implementation of a computerized data system regarding the EEOC case. In fact, all efforts by Connors and Cuiffo to retain qualified computer personnel to implement the system were rejected by the International. In addition, Connors and Cuiffo discovered that the Local Union had paid more than $3.7 million to the computer vendor in the five years prior to Connors' election (which included the 18-month period of time in which the Local Union was under the First Trusteeship), and still had no working computer system in place.

- Nigro alleged that "Local union meetings are often out of control, even reaching the point of physical disorder and violence." Yet, of the 35 Local Union meetings which Connors presided over since his election as President/Business Manager, Norberg could

testify about just one meeting, six months before the trusteeship was imposed, which was purportedly "out of control" and where there was a fight.

- Nigro alleged that the Local Union was "administered in a haphazard, incompetent fashion," and claimed that his and the Supervisor's directives were ignored. With respect to this allegation, Norberg's only testimony was that the Local Union had been paying a maintenance fee of $25,000 per month to a software developer from February 2012 to September 2013 without a contract – disregarding the fact that under the First Trusteeship the Local Union was paying the same firm a fee of $75,000 per month without a contract, and that Financial Secretary-Treasurer Cuiffo succeeded in lowering the fees to $25,000 per month after demanding detailed written invoices. DiOrio's testimony also provided no substantiation for the allegation of "haphazard, incompetent" administration. DiOrio testified (i) that the weekly reports Connors was required to send him were not detailed enough, despite the fact that he never once asked Connors to make the reports more detailed; (ii) that DiOrio had held one membership meeting per month during the First Trusteeship, and the Local was now having two union meetings per month; (iii) that he believed there was not enough membership involvement in the committees he had required Connors to create; (iv) that from October 2012 through February 2013 the financial reports given out at membership meetings did not balance, but that as of March 2013 a new format was put into place and the balances now match; and (v) that Connors did not return phone calls from certain business agents and contractors.

47. On or about December 23, 2013, the Subcommittee sent a letter to Nigro informing him that, "after the November 25, 2013 hearing and review of all documentation provided, the Subcommittee hereby ratifies Local Union 28 being placed under trusteeship for a period of more than sixty (60) days." No explanation, rationale or opinion was given by the

Subcommittee detailing the grounds for its determination, and no discussion of the evidence was included in the Subcommittee's letter. Consequently, it is impossible to know which, if any, of the reasons given by Nigro in his November 13, 2013 letter constituted the ultimate reasons for the establishment of the trusteeship.

48. Upon information and belief, by reason of the establishment of the trusteeship over Local 28, there will be no election of delegates to represent Local 28 at the August 2014 International Convention, and as a consequence, no delegates from Local 28, one of the largest Local Unions in SMART, will be able to vote in the election of International officers at the Convention.

49. On or about December 30, 2013, DiOrio sent letters to Connors and Cuiffo, removing them from their respective positions as President/Business Manager and Financial Secretary-Treasurer, effective January 1, 2014.

50. In mid-December 2013, Business Agents Frank Nitto, Ray Minieri, and Ralph Totora were reinstated by DiOrio to their positions as Business Agents of Local 28, but were not reinstated as Trustees of the Funds.

51. On or about January 14, 2014, DiOrio filed internal disciplinary charges against Connors and Cuiffo, purportedly based on the alleged "double-dipping" and the alleged failure to secure the return of a Local Union cell phone from former Business Agent Robert Rotola for a two month period after he left office.

52. On or about March 7, 2014, DiOrio advised the Funds' counsel who had filed the Trustees' lawsuit that they were terminated.

53. Upon information and belief, the trusteeship imposed on Local 28 on November 13, 2013 was not established in good faith, but was in fact established in retaliation

against Connors and other Union officers for their initiation of, and refusal to drop, the Trustees' lawsuit; in retaliation against Connors for launching a political campaign against Nigro for the position of General President of SMART; and to prevent Local 28 from having any delegates at the August 2014 Convention who would have been entitled to vote in the election of International officers.

**AS AND FOR A FIRST CAUSE OF ACTION**

54. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as if fully set forth herein

55. The trusteeship imposed on Local 28 on November 13, 2103 was not established by the International in good faith for a purpose allowable under 29 U.S.C. § 462, but instead was established in retaliation against Connors, Cuiffo, and the other Union Trustees for filing, and refusing to drop, the Trustees' lawsuit, and in retaliation against Connors for launching a political campaign against Nigro for the position of General President of SMART.

56. The trusteeship established on November 13, 2013 constitutes a continuation of the trusteeship first established by the International in November 2010, and effectively extended by the International on May 8, 2012 under the guise of "supervision," and is therefore presumptively invalid under 29 U.S.C. § 464.

57. By reason of the foregoing, the trusteeship over Local 28 established by the International on November 13, 2013 is in violation of 29 U.S.C. § 464.

**AS AND FOR A SECOND CAUSE OF ACTION**

58. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 57 above as if fully set forth herein.

59. By reason of the International's failure to provide Connors with the

evidence on which it purportedly relied in a reasonable time before the trusteeship hearing, and the failure of the Subcommittee to provide any rationale for its decision to ratify the General President's imposition of the trusteeship, the International failed to conduct a full and fair hearing, as required by the Constitution, and failed to afford due process to Local 28 and the officers thereof, in violation of the International Constitution and 29 U.S.C. §§ 462 and 464.

**AS AND FOR A THIRD CAUSE OF ACTION**

60. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 59 above as if fully set forth herein.

61. By reason of the International's failure to provide Connors with the evidence on which it purportedly relied in a reasonable time before the trusteeship hearing, and the failure of the Subcommittee to provide any rationale for its decision to ratify the General President's imposition of the trusteeship, the International failed to conduct a full and fair hearing, as required by the International Constitution, and failed to afford due process to Local 28 and the officers thereof, in violation of Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs demand judgment against the defendant:

a) Granting preliminary and permanent injunctions ordering the defendants to lift the trusteeship and reinstate the elected officers of Local 28 to their positions;

b) Granting plaintiffs' reasonable attorney's fees and the costs incurred in this action; and

c) Granting such other and further relief as the court may deem just and proper.

Dated: June 23, 2014
New York, New York

LEWIS, CLIFTON & NIKOLAIDIS, P.C.

By: /s/ Daniel E. Clifton
________________________________

Daniel E. Clifton
Rachel S. Paster
350 Seventh Avenue, Suite 1800
New York, New York 10001
(212) 419-1500
(212) 419-1510 (fax)
dclifton@lcnlaw.com
rpaster@lcnlaw.com

*Attorneys for plaintiffs Kevin Connors, James Cuiffo, Arthur Fitzpatrick, William Miranda, Joseph Cangeleri and Barry Kilpatrick*

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 23, 2014
New York, New York

/s/ Daniel E. Clifton
________________________________
Daniel E. Clifton